UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KELANDRIUS BAKER,

Plaintiff,

v. Case No. 3:26-cv-2023-JEP-SJH

JEFFREY R. MCCLELLAN, et al.,

Defendants.

---

**ORDER**

Plaintiff Kelandrius Baker, an inmate of the Florida Department of Corrections, is proceeding on a pro se Complaint for Violation of Civil Rights ("**Complaint**," Doc. 1). Plaintiff sues Warden Jeffrey R. McClellan, Lieutenant Daniel Wendorff, Colonel William Blitch, and Captain Scott W. Durborow, in their individual and official capacities, on a garden-variety of claims based on events that occurred at Florida State Prison ("**FSP**") in 2025 and 2026. (*Id.*).

The predominant theme of Plaintiff's Complaint appears to be that Colonel Blitch, who Plaintiff alleges to be a member of the Ku Klux Klan, has been trying to kill Plaintiff since October 2025.[1] (*Id.* at 12, 15). Plaintiff also

---

[1] Plaintiff accuses Colonel Blitch of making the following comments: "Thank God, [my] church only allows [my] kind," referring to his "all[-]white church"; "I hate snitches"; and FSP stands for two things: "F*** State Policy" and "Faggots, Sissies, and Punks." (Doc. 1 at 13). Plaintiff alleges that although Warden McClellan and

alleges that Colonel Blitch has subjected him to tobacco smoke every day and to "excessive force with chemical agents for no reason a lot of times." (*Id.* at 13, 15, 17). Additionally, Plaintiff alleges that Colonel Blitch has intercepted his mail, confiscated his legal paperwork, moved inmates around to interfere with his lawsuit, and retaliated against him for filing grievances and appealing his disciplinary reports. (*Id.* at 13, 15–17). Plaintiff further alleges that in October 2025, Colonel Blitch shared with unidentified inmates his HIPAA-protected HIV diagnosis and sexual orientation from his medical records and written statement.[2] (*Id.* at 12–13, 16).[3]

---

Warden Polk (non-party) heard these comments on October 6–17, 2025, they did "nothing" to stop the threats and harassment towards Plaintiff. (*Id.* at 13, 16).

[2] Plaintiff prepared this written statement in response to a disciplinary report accusing him of sexual battery. (Doc. 1 at 12). Plaintiff alleges the disciplinary report was false because Plaintiff "told Brandon Stevens [that he was] HIV positive before having consented sex with him." (*Id.*). Plaintiff also alleges Colonel Blitch, through the actions or omissions of unidentified correctional officers, has violated Plaintiff's procedural due process rights by refusing to help him prepare for the disciplinary hearings and to present a written statement or call witnesses. (*Id.* at 12, 16).

[3] Plaintiff also alleges that unidentified person(s) at FSP have harassed him daily, as follows:

> I'm being told no to showers, no to rec [sic] yard, no to attending school, or any of the programs [FSP] is offering! My food is being served cold daily[,] and it's being served and prepared under unsanitary conditions. I'm being neglected on getting my tablet, which is my property! I've been denied medical attention from physical injury to mental health. I'm being denied visitations! . . . I'm being denied my 30 minutes [sic] phone call.

(Doc. 1 at 15 (paragraph numbering omitted)). In addition, Plaintiff claims he was placed on property restriction (no bed, mattress, linens, clothing, medicine, or personal hygiene items) on September 11–21, November 28–December 10, and December 14–18, 2025. (*Id.* at 14, 16).

Somewhat unrelatedly, Plaintiff also describes two cell extractions. During the first cell extraction on December 14, 2025, Plaintiff claims he was physically and sexually assaulted in Lieutenant Wendorff's presence.[4] (*Id.* at 14). Plaintiff explains:

> When the cell extraction team came into my room[,] they wrestled me to the ground[,] pinning me down[,] each of them grabbing a part of my body while [Correctional Officer] Palmer was on top of me[,] grabbing my left hand[,] bending my middle two fingers[.] . . . [A]fter breaking my fingers by bending them in awkward directions[,] he then started punching me in my face[,] causing a gash near my eye to the point I need[ed] stitches. After the decontamination shower[,] [Lieutenant] Wendorff asked me [if] I need[ed] medical attention[.] I told him[,] yes[,] for the gash near my eye that need[ed] stitches and for my broken fingers . . . . [W]hile the cell extraction team was in my room[,] physically assaulting me[,] one of the [correctional officer's] stuck their finger up my butt[,] sexually assaulting me. I received no medical attention! The nurse ignored my gash[] [and] my bleeding.

(*Id.*). Then, Plaintiff describes the second cell extraction as follows:

> [On] January 28, 2026[,] the cell extraction team came in my room[,] physically beating me once more with excessive force[,] both chemical and physical. [Correctional Officer] Howard came into my cell[,] wrestled me to the floor, pinned me down with the other four unknown [correctional officers] and [Correctional Officer] Howard started punching me in the face[,] giving me a black eye[,] while the other [correctional officers] were trying to break my bones and they were punching me in my face, ribs, [and] sides . . . . I again received no type of medical attention and Captain Durborow lied[,] saying I had a knife on me[,] [sic] which they could've killed me and justified on [sic] their reason for killing me!

---

[4] Correctional officers Palmer, Whitehead, Cribbs, and two other unknown officers allegedly participated in the extraction. (Doc. 1 at 14).

(*Id.*). Based on these allegations, Plaintiff seeks injunctive relief and nominal, compensatory, and punitive damages. (*Id.* at 18).

The Prison Litigation Reform Act requires the Court to dismiss an action at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), and, therefore, courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). The factual allegations in a complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). All reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). While "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). Further, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." *Rehberger v. Henry Cnty., Ga.*, 577 F. App'x 937, 938 (11th Cir. 2014) (unpublished but persuasive) (quotations and citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in a section 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); *Porter v. White*, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Construing Plaintiff's allegations liberally,[5] the Complaint will be dismissed without prejudice for failure to state a plausible claim for relief. First, to the extent Plaintiff alleges that Colonel Blitch made harassing, derogatory, or threatening comments, such comments do not amount to constitutional violations. *See Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) (stating that "verbal taunts . . . [h]owever distressing" cannot establish a claim under the Eighth Amendment); *McFadden v. Lucas*, 713 F.2d

[5] In assessing a pro se party's pleadings, the court must read the allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham*, 654 F.3d at 1175.

143, 146 (5th Cir. 1983) (recognizing that "'mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations'" (citation omitted)); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (unpublished but persuasive) (stating that "prison officers' threats that were never carried out [are] insufficient to state a constitutional violation"); *Pete's Towing Co. v. Tampa, Fla.*, 648 F. Supp. 2d 1276, 1287 (M.D. Fla. 2009) ("[V]erbal threats and harassment are generally not actionable under § 1983." (citation omitted)); *Barfield v. Hetzel*, No. 2:11-cv-1114-WHA, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015) ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."). Because Colonel Blitch's alleged comments do not amount to constitutional violations, Warden McClellan and Warden Polk cannot be liable for failing to respond to such comments.

Next, to the extent Plaintiff alleges that Colonel Blitch subjected him to second-hand tobacco smoke, he fails to state a plausible claim for relief. To state a claim of deliberate indifference to unsafe conditions of confinement, Plaintiff must allege Defendant was deliberately indifferent to conditions that were "sufficiently serious." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004). Conditions of confinement are sufficiently serious only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious

damage to his future health or safety." *Id.* at 1289. Exposure to environmental tobacco smoke ("**ETS**") may form the basis of a deliberate indifference claim when a plaintiff alleges that prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The plaintiff must establish "both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Id.* "With respect to the objective factor, [the plaintiff] must show that he himself is being exposed to unreasonably high levels of ETS." *Id.* "Relevant facts include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy." *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (citing *Helling*, 509 U.S. at 35–36). In addition:

> [W]ith respect to the objective factor, determining whether [a plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36 (emphasis in original). The subjective factor "should be determined in light of the prison authorities' current attitudes and conduct." *Id.* It requires the prisoner to "show that prison authorities demonstrated a

'deliberate indifference' to his plight." *Kelley*, 400 F.3d at 1284 (citing *Helling*, 509 U.S. at 36). "The adoption of a smoking policy 'will bear heavily on the inquiry into deliberate indifference.'" *Id.* (citing *Helling*, 509 U.S. at 36).

Here, Plaintiff does not allege that "he was exposed to unreasonably high levels of [smoke] and that the risk to his health was so 'grave' as to 'violate contemporary standards of decency.'" *Id.* (citations omitted). He also does not allege facts showing Defendant was deliberately indifferent. *See id.* ("At most, [plaintiff] established that [defendants] were negligent in enforcing the non-smoking policy . . . ."). Thus, Plaintiff's vague allegations of exposure to ETS are insufficient to state a deliberate indifference claim under the Eighth Amendment.

Further, Plaintiff alleges that Colonel Blitch subjected him to "excessive force with chemical agents for no reason a lot of times." (Doc. 1 at 13). These allegations are wholly insufficient to give Defendant an adequate notice of the claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Similarly, Plaintiff's allegations that Colonel Blitch intercepted his mail and took his legal paperwork through the actions of unidentified officers are insufficient to give Defendant an adequate notice of Plaintiff's claims. Likewise, Plaintiff's vague and conclusory allegations of harassment by unidentified persons, who have allegedly deprived him of showers, visitations, phone calls, educational opportunities, a bed, linens, clothing, personal hygiene items, medical care,

proper food, and a tablet, are insufficient to give Defendant(s) an adequate notice of such claims.[6] (*See* Doc. 1 at 14–16).

In addition, to the extent Plaintiff alleges that Colonel Blitch retaliated against him for filing grievances and appealing his disciplinary reports, he fails to state a plausible retaliation claim. To bring an actionable claim for retaliation, Plaintiff must allege that he engaged in "constitutionally protected" speech, he "suffered adverse action" because of that speech, and there is a causal connection between the speech and the adverse action. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). Plaintiff does not explain when he engaged in the constitutionally protected speech, what type of adverse action he suffered, and how the speech caused the adverse action.

[6] It is unclear what, if any, claims Plaintiff purports to bring against Lieutenant Wendorff in connection with the December 14, 2025 cell extraction. (*See* Doc. 1 at 14). To the extent Plaintiff attempts to hold Lieutenant Wendorff liable for failing to provide "medical attention" to him, his allegations are wholly inadequate to state a plausible medical deliberate indifference claim. (*See id.*). It is also unclear what type of claim Plaintiff attempts to bring against Captain Durborow for his involvement in the January 28, 2026 cell extraction. (*Id.*). If Plaintiff believes he can state plausible claims in connection with the cell extractions, he may file separate civil rights actions, including only related claims and describing each Defendant's involvement in the alleged constitutional deprivations. *See* Fed. R. Civ. P. 20(a)(2) (stating that a complaint may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action").

Further, to the extent Plaintiff attempts to hold Colonel Blitch liable under HIPAA[7] for sharing his HIV diagnosis and sexual orientation with unidentified inmates, HIPAA does not create a private cause of action. *See Sneed*, 370 F. App'x at 50 ("HIPAA contains no express provision creating a private cause of action. We decline to hold that HIPAA creates a private cause of action, or rights that are enforceable through § 1983." (citation omitted)). In any event, it appears that Plaintiff waived any confidentiality protections when he "told Brandon Stevens [that he was] HIV positive before having consented sex with him." (Doc. 1 at 12). In light of his statement to Brandon Stevens, Plaintiff alleges the disciplinary report that accused him of sexual battery was false. (*Id.*). However, even if the disciplinary report was false, an inmate does not have a constitutional right to be free from false accusations and generally may not challenge a disciplinary report in a civil rights action unless the report has been overturned or expunged. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[A] claim for declaratory relief and money damages, based on allegations . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."); *see also Wagner v. Smith*, No. 5:06-

---

[7] The Health Insurance Portability and Accountability Act ("**HIPAA**"), "generally provides for confidentiality of medical records and governs the use and disclosure of protected health information by covered entities that have access to that information and that conduct certain electronic health care transactions." *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) (unpublished but persuasive) (citing 45 C.F.R. § 164.502).

cv-11-MCR-EMT, 2006 WL 2482782, at *3 (N.D. Fla. Aug. 25, 2006) ("[T]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation.").

Plaintiff also alleges that Colonel Blitch violated his Fourteenth Amendment due process rights when, through the actions or omissions of other correctional officers, he did not help Plaintiff prepare for the disciplinary hearings and did not allow Plaintiff to present his own statement or call his own witnesses. (Doc. 1 at 12, 16). Courts "examine procedural due process questions in two steps." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State," and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* Even if a plaintiff shows a liberty interest at stake, the due process clause requires only "some evidence" to support the disciplinary decision. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56.

Here, Plaintiff does not seem to describe the liberty or property interest that the State has allegedly interfered with.[8] Further, a prisoner does not have an absolute right "to call witnesses and present documentary evidence in his defense" at a disciplinary hearing. *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974). Rather, he may be allowed to do so when it will not "be unduly hazardous to institutional safety or correctional goals." *Id.* Therefore, accepting Plaintiff's allegations as true, he has not alleged a plausible claim for relief.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Complaint (Doc. 1) is **DISMISSED without prejudice**.

2. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

[8] Assuming that Plaintiff was subjected to disciplinary confinement, the Supreme Court has held that the imposition of disciplinary confinement does not trigger due process protections. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *see also Woodson v. Whitehead*, 673 F. App'x 931, 933 (11th Cir. 2016) (unpublished but persuasive) ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated."). If Plaintiff has lost gain time, he may pursue any available relief through a habeas corpus action under 28 U.S.C. § 2241 after exhausting his state court remedies as required under 28 U.S.C. § 2254. *Tedesco v. Sec'y for Dep't of Corr.*, 190 F. App'x 752, 755–56 (11th Cir. 2006) (unpublished but persuasive).

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of October, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Kelandrius Baker, #V72431